**KJC LAW GROUP, A.P.C.**
Kevin J. Cole (SBN 321555)
9701 Wilshire Blvd., Suite 1000
Beverly Hills, CA 90212
Telephone: (310) 861-7797
e-Mail:  kevin@kjclawgroup.com

*Attorneys for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT TAULER, individually and on behalf of all others similarly situated,<br><br>　　　　Plaintiff,<br><br>v.<br><br>EFEX AI, INC. dba STANDARD WORKS, a Delaware corporation; and DOES 1 to 10, inclusive,<br><br>　　　　Defendants. | CASE NO.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF CALIFORNIA's RESTRICTIONS ON UNSOLICITED COMMERCIAL E-MAIL (Bus. & Prof. Code § 17529.5)**<br><br>(***JURY TRIAL DEMANDED***) |

CLASS ACTION COMPLAINT

## **NATURE OF ACTION**

1.      Plaintiff Robert Tauler ("Plaintiff") brings this Class Action Complaint for damages, injunctive relief, and any other available legal or equitable remedies, due to the illegal actions of Defendant Efex AI, Inc. dba Standard Works ("Defendant") in knowingly and/or willingly engaging in the unlawful practice of advertising in false and deceptive unsolicited commercial e-mails ("spams") in violation of California Business & Professions ("Bus. & Prof.") Code § 17529.5 ("Section 17529.5").

2.      In 2003, the California Legislature found that "[r]oughly 40 percent of all e-mail traffic in the United States is comprised of unsolicited commercial e-mail advertisements [] and industry experts predict that by the end of 2003 half of all e-mail traffic will be comprised of spam."  Bus. & Prof. Code § 17529, subd. (a).

3.      The California Legislature also found that spam e-mails do cause damage and acknowledged the cost of spam in the United States in 2003: "According to Ferris Research Inc., a San Francisco consulting group, spam will cost United States organizations more than ten billion dollars ($10,000,000,000) this year, including lost productivity and the additional equipment, software, and manpower needed to combat the problem. California is 12 percent of the United States population with an emphasis on technology business, and it is therefore estimated that spam costs California organizations well over 1.2 billion dollars ($1,200,000,000)." *Id.*, subd. (d).

4.      However, since the California Legislature declared its findings regarding the cost of spam in 2003, the actual cost has increased dramatically.  In 2012, for example, the Journal of Economic Perspectives published an academic paper which estimated that e-mail spam cost American businesses and consumers roughly $20 billion annually.  *See* Rao, Justin M., and David H. Reiley. 2012. "*The Economics of Spam.*" Journal of Economic Perspectives, 26 (3): 87–110.

5.      As of November 2018, spam e-mail messages accounted for 54.3 percent of the total e-mail traffic worldwide.  *See* Symantec Corporation, *Monthly Threat Report* (December 2018).

CLASS ACTION COMPLAINT

6. Plaintiff brings this Complaint, individually and on behalf of the putative Class, against Defendant for advertising in at least one unsolicited commercial e-mail[1] (i.e., "spams") sent to Plaintiff's California e-mail address beginning on or about May 20, 2026.

7. The spam e-mails sent by Defendant materially violated Bus. & Prof. Code § 17529.5, subd. (a)(3) because they contain subject lines that are likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the content or subject matter of the e-mail. *See*, *e.g.*, *Balsam v. Trancos, Inc.*, 203 Cal.App.4th 1083, 1102–03 (2012) (California's "anti-spam" legislation is not preempted by the federal CAN-SPAM Act of 2003 where the communication is deceptive in nature). The spams involve deception as to a material matter—the actual purpose of the e-mail (i.e., to convince attorneys like Plaintiff to hire Defendant for its purported "AI-driven eDiscovery product").

8. Defendant sent each of its illegal spam e-mails to a California e-mail address.[2]

9. Plaintiff never gave "direct consent"[3] as required by Bus. & Prof. Code § 17529.1, subd. (d) to receive commercial e-mail advertisements from, nor did he have a "preexisting or current business relationship"[4] pursuant to Bus. & Prof. Code § 17529.1,

---

[1] "Unsolicited commercial e-mail advertisement" means that the recipient has not provided direct consent to receive advertisements from the advertiser and does not have a preexisting or current business relationship, as defined by subdivision (l), with the advertiser promoting the lease, sale, rental, gift, offer or other disposition of any property, goods, services, or extension of credit. *See* Bus. & Prof. Code § 17529.1, subd. (o)(1)–(2).

[2] "California electronic mail address" or "California e-mail address" means any of the following: (1) an e-mail address furnished by an electronic mail service provider that sends bills for furnishing and maintaining that e-mail address in this state; (2) an e-mail address ordinarily accessed from a computer located in this state; or (3) an e-mail address furnished to a resident of this state. *See* Bus. & Prof. Code § 17529.1, subd. (b).

[3] "Direct consent" means that the recipient has expressly consented to receive e-mail advertisements from the advertiser, either in response to a clear and conspicuous request for the consent or at the recipient's own initiative. Bus. & Prof. Code § 17529.1, subd. (d).

[4] "Preexisting or current business relationship," as used in connection with the sending of a commercial e-mail advertisement, means that the recipient has made an inquiry and has provided his or her e-mail address, or has made an application, purchase, or transaction,

2

CLASS ACTION COMPLAINT

subd. (l), with Defendant.

10.    Spam recipients are not required to allege or prove reliance or actual damages to have standing.  *See* Bus. & Prof. Code § 17529.5, subd. (b)(1)(A)(iii).  Nevertheless, Plaintiff did suffer damages by receiving the spams.  *See*, *e.g.*, Bus. & Prof. Code § 17529, subds. (d), (e), (g) & (h).  However, Plaintiff elects to recover statutory damages only and forego recovery of any actual damages.  *See* Bus. & Prof. Code § 17529.5, subd. (b)(1)(B).

11.    The unlawful elements of these spams represent willful acts of falsity and deception, rather than clerical errors.

12.    This Court should award Plaintiff and the members of the proposed Class liquidated statutory damages against Defendant in the amount of $1,000 per unlawful spam e-mail, as authorized by Bus. & Prof. Code § 17529.5, subd. (b)(1)(B)(ii).

13.    This Court should award Plaintiff attorneys' fees pursuant to Bus. & Prof. Code § 17529.5, subd. (b)(1)(C) ("The recipient, an electronic mail service provider, or the Attorney General, if the prevailing plaintiff, may also recover reasonable attorney's fees and costs.").

## JURISDICTION AND VENUE

14.    This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because the total matter in controversy exceeds $5,000,000 and there are over 100 members of the proposed class. Further, at least one member of the proposed class is a citizen of a State within the United States and at least one defendant is the citizen or subject of a foreign state.

15.    The Northern District of California has general personal jurisdiction over Defendant—and venue is proper in this Court—because Defendant's headquarters and principal place of business is located at 836 Bay St., San Francisco, CA 94109.

///

---

with or without consideration, regarding products or services offered by the advertiser. Bus. & Prof. Code § 17529.1, subd. (l).

3

CLASS ACTION COMPLAINT

## **PARTIES**

16.    Plaintiff is now, and at all times relevant has been, an individual domiciled in Los Angeles, California.

17.    Plaintiff owns, and at all relevant times has owned, a computer with an Internet connection.  This computer is located in the State of California.

18.    Plaintiff ordinarily uses this computer to access Plaintiff's e-mail address, rtauler@taulersmith.com.

19.    Plaintiff ordinarily accesses his e-mail account from California.

20.    Plaintiff is a "recipient" as defined by Bus. & Prof. Code § 17529.1, subd. (m) of "unsolicited commercial e-mail advertisements" as defined by Bus. & Prof. Code § 17529.1, subd. (o).

21.    Plaintiff received unlawful unsolicited commercial e-mails (defined above as "spams") linking to Defendant's web page at https://standardworks.ai/.  Plaintiff did not give direct consent to Defendant to send Plaintiff any commercial e-mail advertising.

22.    Defendant is a Delaware corporation with its principal place of business in San Francisco, California.

23.    At all times material to this Complaint, Defendant has owned and operated the https://standardworks.ai/ website.  Defendant transacts or has transacted business in California and throughout the United States and has created an ongoing relationship in California related to the distribution of spam e-mails.

24.    Defendant is an "advertiser" as defined by Bus. & Prof. Code § 17529.1, subd. (a), with respect to each of the e-mails received by Plaintiff.

25.    Plaintiff does not know the true names or capacities of the persons or entities sued as DOES 1 to 10, inclusive, and therefore sues such Defendants by such fictitious names.  Plaintiff is informed and believes, and upon such information and belief alleges, that each of the DOE Defendants is in some manner legally responsible for the damages suffered by Plaintiff and the Class members as alleged in this Complaint.  When the identities of DOES 1 to 10 are discovered, or otherwise made available, Plaintiff will seek

4

CLASS ACTION COMPLAINT

leave to amend this Complaint to allege their identity and involvement with particularity.

## THE UNLAWFUL SPAM E-MAILS

26.     On May 20, 2026, Defendant sent an unsolicited commercial e-mail to Mr. Tauler with the subject line: "Re: Haviland v. Alen Corporation," as shown below.

**From:** Nicholas Alioto-Pier <nicholas@standardworks.us>
**Date:** May 20, 2026 at 10:31:21 PM GMT+2
**To:** rtauler@taulersmith.com
**Subject: Re: Haviland v. Alen Corporation**

Robert,

I saw your filing against Alen Corporation. A handful of emails between Alen's marketing team and their data broker integration specialists may decide this, buried in 100,000s of website analytics and SDK configuration pages. Slow manual review stalls case strategy, balloons budgets, and still misses hot documents. TAR pattern-matches your seed set, so an outlier email showing knowing installation of non-compliant tracking code could stay buried.

We've developed an AI-driven eDiscovery product. It prioritizes each file against your legal strategy. We want to analyze your initial 25,000 pages at no cost. You'll receive the top-ranked documents in under a day. Interested?

Talk soon,
Nicholas

PS: to cease getting messages, respondto us with "unsubscribe"
San Francisco, 43 Dore St.

27.     That subject line is materially misleading and violates California Business & Professions Code § 17529.5, subdivision (a)(3).  The subject line is designed to create the false impression that the e-mail is part of an existing chain of communications regarding the case *Haviland v. Alen Corporation* and concerns substantive litigation-related information relevant to Plaintiff's legal practice.

28.     In particular, the use of the "Re:" prefix strongly implies that Defendant is responding to a prior communication or participating in an ongoing discussion concerning the litigation itself.  Given Mr. Tauler's profession as a practicing attorney and the case-specific nature of the subject line, the email reasonably appears to concern one of his pending litigations.  Indeed, when Mr. Tauler received Defendant's e-mail, he reasonably believed it concerned an actual litigation-related communication regarding *Haviland v. Alen Corporation*.  In reality, Mr. Tauler has no relationship whatsoever with Defendant and had never previously communicated with Defendant regarding the referenced litigation or any other matter.  Defendant's e-mail was not a litigation communication, discovery correspondence, or case-specific notice.  Instead, it was a commercial advertisement sent

CLASS ACTION COMPLAINT

for the sole purpose of marketing Defendant's purported "AI-driven eDiscovery product" for profit.  The body of the email confirms this. Defendant attempts to market its software and services by claiming it can analyze litigation documents and identify "outlier" emails allegedly relevant to Plaintiff's legal strategy.  Defendant further solicits Plaintiff to utilize Defendant's platform by offering to analyze "25,000 pages at no cost."

29.    In other words, Defendant's e-mail involves deception as to a material matter—the true purpose of the communication.  Defendant intentionally used a misleading litigation-themed subject line to induce attorneys to open the e-mail under the mistaken belief that it concerned an actual pending case matter requiring professional attention.  This is precisely the type of deceptive practice California's anti-spam statute prohibits. *See, e.g.*, *Balsam v. Trancos, Inc.*, 203 Cal.App.4th 1083, 1102–03 (2012). The deceptive nature of the communication is compounded by Defendant's use of the "Re:" prefix, which falsely implies the existence of prior communications or an existing relationship between the parties.

30.    Further, the e-mails at issue are "commercial e-mail advertisements" because they advertise Defendant's AI-driven eDiscovery and litigation-support services provided through https://standardworks.ai/.

31.    The e-mails are "unsolicited commercial e-mail advertisements" because Plaintiff never gave "direct consent" to Defendant to send commercial e-mails.

32.    Plaintiff has never had a "preexisting or current business relationship" with Defendant.  Nor did Plaintiff "opt-in" to receive e-mails from Defendant.

33.    Plaintiff did not consent or acquiesce to receive the spams at issue.  Plaintiff did not waive any claims related to the spams at issue.

34.    Defendant advertised in, sent, and/or conspired to send at least one unlawful spam that Plaintiff received at his "California e-mail address."

35.    The spams are all unlawful because the spams contain misleading Subject Lines, as described in more detail below.

36.    These Subject Lines, even when viewed in conjunction with the body of the

6

CLASS ACTION COMPLAINT

e- mail, are materially false and deceptive. As a result, they are likely to mislead a recipient acting reasonably about a material fact regarding the content or subject matter of the message.[5]

**No Proof of Reliance or Actual Damages is Necessary Because Plaintiff Sues for Statutory Liquidated Damages**

37. The California Legislature set liquidated damages as $1,000 per spam. Bus. & Prof. Code § 17529.5, subd. (b)(1)(B)(ii).

38. Plaintiff is informed and believes, and on that basis alleges, that the $1,000 per spam figure is comparable with damages in other areas of consumer protection law (e.g., $500 to $1,500 in statutory damages per junk fax, pursuant to Business & Professions Code § 17538.43, subd. (b)).

39. Plaintiff's rightful and lawful demand for liquidated damages in the amount of $1,000 per e-mail is necessary to further the California Legislature's objective of protecting California residents from unlawful spam.

40. Section 17529.5 does not require Plaintiff to quantify his actual damages, allege or prove reliance on the advertisements contained in the spams, or purchase the goods and services advertised in the spams. Recipients of unlawful spam have standing to sue and recover liquidated damages. *See* Bus. & Prof. Code § 17529.5, subd. (b)(1)(A)(iii); *Hypertouch*, *supra*, 192 Cal.App.4th at 820, 822–23 & 828.

41. However, Plaintiff did suffer damages by receiving the unlawful spams

---

[5] Regardless of whether Defendant or a third-party marketing firm (e.g., an advertisement agency) sent the spams, Defendant is strictly liable. *See* Bus. & Prof. Code § 17529, subds. (j) & (k) ("There is a need to regulate the advertisers who use spam, as well as the actual spammers, because the actual spammers can be difficult to track down due to some return addresses that show up on the display as 'unknown' and many others being obvious fakes and they are often located offshore. The true beneficiaries of spam are the advertisers who benefit from the marketing derived from the advertisements."); *Hypertouch Inc. v. ValueClick Inc.*, 192 Cal.App.4th 805, 820–21 (2011) (holding Section 17529.5(a) "makes an entity strictly liable for advertising in a commercial e-mail . . . regardless of whether the entity knew that such e-mails had been sent or had any intent to deceive the recipient.").

7

CLASS ACTION COMPLAINT

advertising Defendant's products and services in the State of California, at his California e-mail address.  Bus. & Prof. Code § 17529, subd. (d), (e), (g) & (h).  Regardless, Plaintiff does not seek actual damages in this action, but instead, only liquidated damages.  Bus. & Prof. Code § 17529.5, subd. (b)(1)(B).

42.    Plaintiff is informed and believes, and on that basis alleges, that Defendant has not established and implemented, with due care, practices and procedures reasonably designed to effectively prevent unsolicited commercial e-mail advertisements that are in violation of Section 17529.5.

## CLASS ACTION ALLEGATIONS

43.    As authorized by Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of the following classes of persons or entities similarly situated throughout the United States.

44.    Plaintiff brings this action for statutory liquidated damages on behalf of himself and all persons similarly situated and seeks certification of the following class:

> All California residents who received a false or deceptive unsolicited commercial e-mail that has a Subject Line likely to mislead a recipient, which advertised Defendant's products or services, since the one year prior to the filing of this action.

45.    The above-described class of persons shall hereafter be referred to as the "Class."  Excluded from the Class are any and all past or present officers, directors, or employees of Defendant, any judge who presides over this action, and any partner or employee of Class Counsel.  Plaintiff reserves the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection with his motion for class certification, or at any other time, based upon, *inter alia*, changing circumstances and/or new facts obtained during discovery.

46.    **Numerosity**.  The potential Class members as defined are so numerous and so diversely located throughout California, that joinder of all the Class members is impracticable.  Class members are dispersed throughout California.  Joinder of all members

CLASS ACTION COMPLAINT

of the proposed Class is therefore not practicable. Although Plaintiff does not know the precise number of Class members, due to the nature of the trade and commerce involved, Plaintiff believes that the total number of the members of the Class is in the thousands (e.g., on information and belief, Defendant sends similar spams to thousands of practicing attorneys throughout California).

47. **Ascertainability**. Upon information and belief, Defendant and/or Defendant's agents and affiliates, maintain records of the e-mails they send and the Internet traffic derived from the e-mail advertising at issue. Moreover, members of the Class who received e-mails with the alleged advertisements may be self-identified through their own e-mail records. As a result, the members of the Class are ascertainable through Defendant's records and/or the records of Defendant's agents and affiliates, as well as through public notice. This matter should therefore be certified as a Class Action to assist in the expeditious litigation of this matter.

48. **Typicality**. Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and all members of the Class have been similarly affected by Defendant's common course of conduct because they all received unlawful, unsolicited spam e-mails that contain subject lines likely to mislead a recipient.

49. **Adequacy of Representation**. Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class. Plaintiff has retained attorneys who are experienced in the handling of complex litigation and class actions, and Plaintiff and his counsel intend to prosecute this action vigorously. Plaintiff has no antagonistic or adverse interests to those of the Class.

50. **Existence and Predominance of Common Questions of Law or Fact**. Common questions of law and fact exist as to all members of the Class that predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary among members of the Class, and which may be determined without reference to the individual circumstances of any member of the Class, include, but are not limited to, the following:

9

CLASS ACTION COMPLAINT

a)   Whether Class members received unsolicited commercial e-mail advertising the website https://standardworks.ai/.

b)   Whether Defendant obtained direct consent to send commercial e-mail to Class members.

c)   Whether Defendant had no preexisting or current business relationship with Class members.

d)   Whether the unsolicited commercial e-mails received by Class members have subject lines likely to mislead a recipient acting reasonably under the circumstances.

e)   Whether the information contained in the e-mail received by Class members is forged, falsified, misrepresented, deceptive, or misleading in violation of Bus. & Prof. Code § 17529.5.

f)   Whether Defendant is liable under Bus. & Prof. Code § 17529.5 for the actions of its affiliates, advertisers, employees or agents, who sent unlawful spams advertising the website https://standardworks.ai//.

51.   **Superiority**.  A Class Action is superior to other available means for the fair and efficient adjudication of this controversy.  Individual joinder of all Class members is not practicable, and questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class.  Plaintiff and the Class members have suffered or may suffer loss in the future by reason of Defendant's illegal practices.  Certification of this case as a class action will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.  Certifying this case as a class action is superior because it allows for efficient relief to Class members, and will thereby effectuate California's strong public policy of protecting the California consumer from violations of its laws.

52.   By contrast, the conduct of this action as a class action, with respect to some or all of the issues presented, presents no management difficulties, conserves the resources of the parties and of the court system, and protects the rights of the members of the Class.

10

CLASS ACTION COMPLAINT

Plaintiff anticipates no difficulty in the management of this action as a class action. The prosecution of separate actions by individual members of the Class may create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other members of the Class who are not parties to such adjudications, or that would substantially impair or impede the ability of such non-party Class members to protect their interests.

53. Defendant has acted or refused to act on grounds that are generally applicable to the Class so that relief is appropriate to the Class as a whole, making class certification appropriate pursuant.

## FIRST CAUSE OF ACTION

**Violations of California's Restrictions on Unsolicited Commercial e-Mail – California Business & Professions Code § 17529.5 (Against All Defendants)**

54. Plaintiff hereby incorporates the foregoing paragraphs as though set forth in full herein.

55. Plaintiff received the spam e-mails within the one year prior to filing this Complaint.

56. Defendant advertised in, sent, assisted others in sending, conspired to send, contracted with others to send, and/or otherwise caused to be sent at least one unsolicited commercial e-mail advertisement to Plaintiff's California electronic mail address that contained subject lines likely to mislead a recipient, in violation of Bus. & Prof. Code § 17529.5.

57. The unlawful elements of these spam e-mails represent willful acts of falsity and deception, rather than clerical errors.

58. The California Legislature set liquidated damages at $1,000 per e-mail.

59. Plaintiff seeks reimbursement of reasonable attorneys' fees and costs as authorized by Section 17529.5, subd. (b)(1)(C).

60. The attorneys' fees provision for a prevailing spam recipient is typical of consumer protection statutes and supported by Code of Civil Procedure § 1021.5. By

11

prosecuting this action, Plaintiff expects to enforce an important right affecting the public interest and thereby confer a significant benefit on the general public or a large class of persons.  The necessity and financial burden of private enforcement is such as to make the award appropriate, and the attorneys' fees should not, in the interest of justice, be paid out of the recovery of damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Robert Tauler prays for relief and judgment in favor of himself and the Class as follows:

**On the First Cause of Action for Violations of Bus. & Prof. Code § 17529.5**

A.     For an order certifying that the action be maintained as a class action, that Plaintiff be designated the class representative, and that undersigned counsel be designated as class counsel.

B.     For an order declaring that Defendant violated Bus. & Prof. Code § 17529.5, by advertising in and sending unlawful spam e-mails.

C.     Liquidated damages against Defendant in the amount of $1,000 per unlawful spam e-mail, as authorized by Bus. & Prof. Code § 17529.5, subd. (b)(1)(B)(ii) for each unlawful e-mail received by Plaintiff and members of the Class.

D.     Reasonable attorneys' fees and costs as authorized by Bus. & Prof. Code § 17529.5, subd. (b)(1)(C).

E.     Disgorgement of all profits derived from unlawful spams directed to California residents; and monies to be turned over to the Unfair Competition Law Fund and used by the California Attorney General to support investigations and prosecutions of California's consumer protection laws.

F.     For such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of himself and the Class, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all claims so triable.

DATED:  May 21, 2026                    Respectfully submitted,

CLASS ACTION COMPLAINT

**KJC LAW GROUP, A.P.C.**

By:    */s/ Kevin J. Cole*
       Kevin J. Cole

       *Attorneys for Plaintiff and the Proposed Class*

CLASS ACTION COMPLAINT